Thomas Lether, OSB #101708
Eric J. Neal, OSB #110268
LETHER LAW GROUP
1848 Westlake Ave N,
Seattle, WA 98109
T: (206) 467-5444
tlether@letherlaw.com
eneal@letherlaw.com

Kristin V. Gallagher, *pro hac vice*
Daniel Pickett, *pro hac vice*
KENNEDYS
120 Mountain View Boulevard
Basking Ridge, New Jersey 07920
T:  (908) 848-1220
Kristin.Gallagher@kennedyslaw.com
Daniel.Pickett@kennedyslaw.com
*Attorneys for Defendant First Mercury Insurance Company*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| ZECO DEVELOPMENT GROUP, LLC DBA RIVER PIG SALOON, an Oregon limited liability company, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>FIRST MERCURY INSURANCE COMPANY, a foreign corporation,<br><br>        Defendant. | No.  3:21-cv-00406-SI<br><br>**DEFENDANT FIRST MERCURY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Pursuant to Fed. R. Civ. P. 56**<br><br>**Request for Oral Argument** |

MOTION FOR SUMMARY JUDGMENT– 1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………….. 3-6

INTRODUCTION ………………………………………………………... 7

STATEMENT OF FACTS………………………………………………... 9

   A. Background ……………………………………………………... 9

   B. The FMIC Policy ……………………………………………….. 10

LEGAL AUTHORITY……………………………………………………... 14

   A.  Summary Judgment Standard …………………………………..... 14

   B.  Policy Interpretation and Burden of Proof …………………………………….. 15

   C.  The Covid-19 Pandemic And Governmental Response Thereto Did Not Cause Direct Physical Loss Of Or Damage To The Insured Premises Or Any Other Property………............................................................................ 16

      1.  *Zeco Cannot Show It Sustained Direct Physical Loss Of Or Damage To Any Property…………………………………………………………………………* 17

      2.  *The FMIC Policy's Reliance On The "Period of Restoration" For Defining Coverage For Business Interruption Losses Further Demonstrates That Actual Physical Harm, Alteration, Or Dispossession To Tangible Property Is Required……………………* 23

   D.  Any Purported "Direct Physical Loss Of Or Damage To" Property Conceivably Caused by COVID-19 Is Excluded……………………………………………….. 25

      1.  *The Virus Or Bacteria Exclusion Is Unambiguous And Plainly Applies Here ….....* 25

      2.  *Coverage Is Excluded Because The COVID-19 Virus Is The Efficient Proximate Cause Of The Claimed Loss………………………………………………………* 27

   E.  No Civil Authority Coverage Is Available Because There Is No Direct Physical Loss To Any Property And No Civil Authority Prohibited Access To Any Property ………… 31

CONCLUSION ……………………………………………………… 36

CERTIFICATE OF SERVICE …………………………………………...37

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*10E, LLC v. Travelers Indem. Co.,*
2020 US Dist LEXIS 165252, at *13-15 (C.D. Cal. Sept. 2, 2020)…………………………….. 22

*Alexis v. Southwood L.P.,*
732 So 2d 100, 102 (La Ct App 2001)…………………………………………………….... 26

*Allianz Global Risks v. ACE Property & Cas. Ins. Co.,*
367 Or 711, 734 (2021)………………………………………………………………….. 15, 16, 25

*BA LAX, LLC v. Hartford Fire Ins. Co.,*
2021 US Dist LEXIS 10919, at *11 (CD Cal 2021)………………………………………….. 29

*Bel Air Auto Auction, Inc. v. Great Northern Ins. Co.,*
2021 US Dist LEXIS 72154 at **34-37 (D Md 2021)………………………………………….. 24

*Border Chicken AZ LLC v. Nationwide Mut. Ins. Co.,*
2020 US Dist LEXIS 217649, at *11-12 (D Ariz 2020)………………………………………….. 29

*Boxed Foods Co., LLC v. Cal. Capital Ins. Co.,*
497 F Supp 3d 516 (ND Cal 2020)………………………………………………………………….. 29

*Bridal Expressions LLC v. Owners Ins. Co.,*
2021 US Dist LEXIS 65716 (ND Ohio 2021)…………………………………………………….. 24

*Brothers, Inc. v. Liberty Mut. Fire Ins. Co.,*
268 A2d 611, 612 (D.C. 1970)…………………………………………………………….... 30

*Brown Jug, Inc. v. Cincinnati Ins. Co.,*
2021 US Dist LEXIS 100063, at *13-14 (ED Mich 2021)……………………………….. 22, 25

*Capitol Specialty Ins. Co. v. Chan & Lui, Inc.,*
248 Or App 674, 680 (2012)…………………………………………………………...16, 23, 25

*Causeway Auto., LLC v. Zurich Am. Ins. Co.,*
2021 US Dist LEXIS 25325 (D NJ 2021)…………………………………………………….. 26

*Celotex Corp. v. Catrett,*
477 U.S. 317, 322, 91 L.Ed. 2d 265, 106 S.Ct. 2548 (1986)…………………………………..15

*Colby Rest. Grp., Inc. v. Utica Nat'l Ins. Grp.,*
2021 US Dist LEXIS 60135 (D NJ 2021)…………………………………………………….. 26

*Couch on Insurance 2d*,
§ 74:711 (Rev ed 1983)……………………………………………………………… 27

*Dakota Ventures, LLC, dba Kokopelli Grill and Coyote BBQ Pub v. Oregon Mut. Ins. Co.*,
No. 3:20-cv-00630-HZ, 2021 US Dist LEXIS 151955 (D Or Aug. 11, 2021)
…………………………………………………………………17, 18, 22, 23, 24, 32, 33, 34, 35

*Dickie Brennan & Co. v. Lexington Ins. Co.*,
636 F3d 683 (2011)……………………………………………………………… 32

*Employers Ins. of Wasau v Tektronix, Inc.*,
211 Or App 485, 509 (2007)……………………………………………………….. 16

*Florexpo LLC v. Travelers Prop. Cas. Co. of America*,
2021 US Dist LEXIS 43056 (SD Cal 2021)………………………………………... 30

*Franklin EWC, Inc. v. The Hartford Financial Services Group, Inc.*
488 F Supp 3d 904, 908 (2020)…………………………………………………….. 29

*Gonzales v. Farmers Ins. Co. of Oregon*,
345 Or 382, 387 (2008)…………………………………………………………….. 16

*Gowans v. N.W. Pac. Indem. Co.*,
260 Or 618, 621 (1971)…………………………………………………………….. 27

*Great Amer. Alliance Ins. Co. v. SIR Columbia Knoll Assocs. L.P.*,
484 F Supp 3d 946, 964 (2020)………………………………………………… 27, 28

*Hillbro LLC v. Or. Mut. Ins. Co.*,
No. 3:21-cv-00382-HZ, 2021 US Dist LEXIS 169052 (D Or Sept. 7, 2021)
……………………………………………………………...… 17, 19, 20, 21, 22, 23, 24, 32, 33

*Hoffman Const. Co. of Alaska v. Fred S. James & Co., of Oregon*,
313 Or 464, 469 (1992) …………………………………………………………15, 25

*Leach v. Scottsdale Indem. Co.*,
261 Or App 234, 245 (2014)……………………………………………………….. 16

*Lewis v. Aetna Ins. Co.*,
264 Or 314, 316, 505 P2d 914 (1973)…………………………………………… 16

*Mashallah, Inc. v. W. Bend Mut. Ins. Co.*,
2021 US Dist LEXIS 31816 (ND Ill 2021)………………………………………… 26

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

*N. Pac. Mgmt. v. Liberty Mut. Fire Ins. Co.*,
Case No. No. 3:21-cv-00404-HZ 2021 US Dist LEXIS 169050 (D Or Sept. 7, 2021)
…………………………………………………………………………..17, 19, 21, 23, 32, 33

*Nari Suda Llc v. Or. Mut. Ins. Co.*,
No. 3:20-cv-01476-HZ, 2021 US Dist LEXIS 169051; (D Or Sept. 6, 2021)
…………………………………………………………………… 17, 19, 20, 21, 22, 23, 24, 31, 33

*Nat'l Chiropractic Mut. Ins. Co. v. Morgan*,
116 Or App 196, 203 (1992)…………………………………………………………….. 16

*Naumes, Inc. v. Landmark Ins. Co.*,
119 Or App 79, 82 (1993)…………………………………………………………….. 27

*Nguyen, et al. v. Travelers Cas. Ins. Co of Amer., et al.*,
2021 US Dist LEXIS 101772 at *28-32 (WD Wash 2021)……………………… 21, 23, 28, 34

*Nue v. Or. Mut. Ins. Co.*, No.
3:20-cv-01449-HZ, 2021 US Dist LEXIS 169054 (D Or Sept. 4, 2021)
……………………………………………………………17, 19, 20, 21, 22, 23, 24, 32, 33

*Paternostro v. Choice Hotel Int'l Servs. Corp.*,
No. 13-0662, 2014 US Dist LEXIS 161157, at *73-75 (ED La 2014)……………………….. 26

*Point Triumph Condo. Ass'n v. Amer. Guar. And Liability Ins. Co.*,
2000 US Dist LEXIS 24718 (D Or 2000)…………………………………………………….. 28

*S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*,
H-06-4041, 2008 US Dist LEXIS 11460 (SD Tex Feb.15, 2018)……………………………. 35

*Sentinel Ins. Co., Ltd. v. Monarch Med. Spa, Inc.*,
105 F Supp 3d 464, 472 (ED Pa 2015)…………………………………………………... 26

*Stanford v. American Guaranty Life Ins. Co.*,
280 Or 525, 527 (1977) …………………………………………………………………… 16

*TJBC, Inc. v. The Cincinnati Ins. Co.*,
2021 US Dist LEXIS 13007 at *3 (SD Ill 2021)…………………………………………… 22

*Totten v. New York Life Ins. Co.*,
298 Or 765, 770 (1985) …………………………………………………………..15, 16, 25

*Town Kitchen LLC v. Certain Underwriters at Lloyd's*,
2021 US Dist LEXIS 36191 (SD Fla 2021)………………………………………...21, 22

MOTION FOR SUMMARY JUDGMENT– 5

*United Air Lines v. Ins. Co. of the State of Pa., infra*,
439 F3d 128 (2nd Cir 2006)……………………………………………………….. 32, 35

*W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*,
498 F Supp 3d 1233 (CD Cal 2020)……………………………………………………26

*ZRZ Realty Co. v. Beneficial Fire and Cas. Ins. Co.*,
349 Or 117, 127 (2010), *modified on recons. on other grounds*, 349 Or 657 (2011) ………... 16

**<u>Statutes</u>**
ORS 742.016…………………………………………………………………….….. 15

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

## MOTION

Pursuant to Fed. R. Civ. P. 56, Defendant First Mercury Insurance Company (FMIC) respectfully submits the following Motion for Summary Judgment seeking dismissal of Plaintiff's claims and entry of declaratory relief in FMIC's favor with regard to its counterclaims.

## I.    INTRODUCTION

This is a putative class action lawsuit brought by Zeco Development Group, LLC, doing business as River Pig Saloon (Zeco), seeking insurance coverage for Business Interruption losses arising from the COVID-19 pandemic. Under the policy issued to Zeco, the Business Interruption coverages include "Business Income," "Extra Expense," and "Civil Authority"[1] coverages.

This motion seeks Rule 56 Summary Judgment dismissal of Zeco's claims for insurance benefits under the Business Interruption coverages. For the reasons discussed herein, there is simply no coverage available to Zeco or its purported class.

The Business Income and Extra Expense coverages are triggered only for income losses or expenses incurred due to direct physical loss of or damage to the insured premises. The Civil Authority coverage is triggered only for orders prohibiting access to the insured premises due to direct physical loss of or damage to property other than the insured premises.  Simply put, there is no basis in law or fact for Zeco or any of the purported class members to claim that the COVID-19 pandemic and/or the actions of the civil authority in response thereto caused any direct physical loss of or damage to any property.  As a result, as to each of the Business Interruption coverages, there is no coverage available.

---

[1] These coverages, where appropriate, are referred to collectively as the "Business Interruption" coverages.

MOTION FOR SUMMARY JUDGMENT– 7

Moreover, another element common to each of the Business Interruption coverages is that the direct physical loss of or damage must be caused by a "Covered Cause of Loss." In the "all-risk" property policies issued by FMIC, the "Covered Cause of Loss" includes all risks except those excluded by the policy. The policy issued by FMIC excludes coverage for losses caused by a virus under following provision:

> We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

As a result, even if Zeco could somehow establish that the virus caused direct physical loss of or damage to the insured premises or some other property, any such loss or damage was caused by an excluded cause of loss and no coverage is available under the policy.

Moreover, the "Civil Authority" coverage provides for loss of business income or extra expenses caused by an act of the civil authority that "prohibits access" to the insured premises due to direct physical loss of or damage to a property other than the insured premises caused by a "covered cause of loss." Access to Zeco's restaurants was never prohibited by Governor Kate Brown's Executive Orders. Rather, Zeco was temporarily barred from offering or allowing consumption of food and beverages inside its restaurants. Zeco's restaurants remained open to the public and Zeco was allowed to and did provide take-out and delivery service of food and beverages to its customers.

Based on the foregoing, FMIC asks that this Court enter an Order Granting Summary Judgment in favor of FMIC and declaring that there is no coverage available to Zeco or its putative class for the claims asserted herein under the FMIC policy.

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

## II.    STATEMENT OF FACTS

### A.    <u>Background</u>

The COVID-19 pandemic began to emerge in the United States in January 2020.  Dkt. 1, ¶11. It is well known by now that COVID-19 is the common name of the disease that is caused by infection with the virus known as SARS-CoV-2.[2]

Zeco owns and operates two taverns located in Portland and Bend that are both known as the River Pig Saloon.  Dkt. 1, ¶ 2. These taverns sell prepared food and beverages to its customers. <https://www.riverpigsaloon.com/>

As a result of the COVID-19 pandemic, Oregon Governor Kate Brown issued Executive Order 20-03, entitled "DECLARATION OF EMERGENCY DUE TO CORONAVIRUS (COVID-19) OUTBREAK IN OREGON." **Exhibit A** to Declaration of Matt Altizer (Altizer Decl.). This Order, issued on March 8, 2020, was expressly predicated on responding to the adverse effects of the virus that causes COVID-19. Specially, Governor Brown found "that the novel infectious coronavirus has created a threat to public health and safety, and constitutes as statewide emergency." *Id.*

On March 17, 2020, Governor Brown issued Executive Order No. 20-07, entitled "PROHIBITING ON-PREMISES CONSUMPTION OF FOOD OR DRINK AND GATHERINGS OF MORE THAN 25 PEOPLE."  **Exhibit B** to Altizer Decl. Executive Order No. 20-07 referenced the prior emergency declaration and provided, in pertinent part, as follows:

> In order to slow the spread of COVID-19 to protect Oregonians who are at high risk for contracting the disease, and to help avoid overwhelming local and regional healthcare capacity, I find that immediate implementation of social distances and community mitigation measures are necessary. The purpose of this Executive

---

[2]   *See*   https://www.who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it (Last visited May 27, 2021).

MOTION FOR SUMMARY JUDGMENT– 9

Order is to reduce person-to-person interaction with the goal of restricting transmission.

**NOW THEREFORE, IT IS HEREBY DIRECTED AND ORDERED THAT:**

<u>Prohibition on On-Premises Consumption of Food and Drink</u>

1.    Pursuant to ORS 433.441(3)(a), (b), (d) and (f), ORS 401.168(1), and ORS 401.188(1)-(3), restaurants, bars, taverns, brew pubs, wine bars, food courts, coffee shops, clubs, or other similar establishments that offer food or drink may not offer or allow on-premises consumption of food or drink.  This prohibition applies statewide.

2.    Establishments may offer food or drink for off-premises consumption (e.g., take-out or drive-through) or for delivery…Any sales of alcoholic beverages for off-premises consumption must comply with ORS chapter 471 and any rules adopted thereunder.

**Ex. B** to Altizer Decl.

Under Executive Order No. 20-07 and the subsequent orders that continued these restrictions, Zeco's restaurants were allowed to remain open to the public for take-out and delivery service of food and beverages. Zeco was never prohibited from providing take-out and delivery food service for its customers at any point in time. Zeco does not allege that the COVID-19 virus was ever present within its premises or that its locations were ever completely shut down due to any governmental authority or action. Rather, Zeco claims that his losses were caused by Governor Brown's orders limiting certain restaurant and bar operations in response to the COVID-19 pandemic. See, Dkt. 1 at p. 4.

**B.    The FMIC Policy**

FMIC issued a Commercial Lines Insurance Policy to Zeco under policy number FMEV112703. **Exhibit C** to Altizer Decl. This policy included commercial property coverage and was in effect from October 30, 2019 to October 30, 2020 (the "FMIC Policy"). The

MOTION FOR SUMMARY JUDGMENT– 10

Declarations in the FMIC Policy list the following locations as the insured premises for purposes of commercial property coverage:

> 529 NW 13th Ave, Portland, OR 97209

> 555 NW Arizona #40, Bend, OR 97702

**Exhibit C** to Altizer Decl., Form FMEG400001 (04/17).

The FMIC Policy contains the following provisions regarding Business Income coverage:

> **1.    Business Income**
> . . .
> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

**Exhibit C** to Altizer Decl., Form CP 00 30 10 12.

The FMIC Policy contains the following provisions regarding Extra Expense coverage:

> **2.    Extra Expense**

> > **a.**    Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

> > **b.**    Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

**Exhibit C** to Altizer Decl., Form CP 00 30 10 12.

The FMIC Policy contains the following provisions regarding Civil Authority coverage:

> **5.    Additional Coverages**

MOTION FOR SUMMARY JUDGMENT– 11

a.    **Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both the following apply:

**(1)**    Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises is within that area but are not more than one mile from the damaged property; and

**(2)**    The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

**Exhibit C** to Altizer Decl., Form CP 00 30 10 12.

The FMIC Policy contains the following provisions regarding Covered Causes of Loss:

**A.    Covered Causes of Loss**

…, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

**Exhibit C** to Altizer Decl., Form CP 10 30 09 17.

The FMIC Policy contains an Exclusion of Loss Due to Virus or Bacteria endorsement

(the "Virus Exclusion"), which provides the following:

**EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA**

This endorsement modifies insurance provided under the following:

MOTION FOR SUMMARY JUDGMENT– 12

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.**    The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority Coverage Form applies, as shown in the Declarations.

**B.**    We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.**    With respect to any loss or damage subject to the exclusion in Paragraph **B.**, such exclusion supersedes any exclusion relating to "pollutants".

**D.**    The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

1.    Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

2.    Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.**    The terms of the exclusion in Paragraph **B.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

**Exhibit C** to Altizer Decl., Form CP 01 40 07 06.

The FMIC Policy contains the following definitions that are applicable to the foregoing

MOTION FOR SUMMARY JUDGMENT– 13

policy provisions:

    **2.**    "Operations" means:

        **a.**    Your business activities at the described premises;
        . . .

    **3.**    "Period of Restoration" means the period of time that:

        **a.**    Begins

            **(1)**    72 hours after the time of direct physical loss or damage for Business Income Coverage; or
            **(2)**    Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

            Caused by or resulting from any Covered Cause of Loss at the described premises; and

        **b.**    Ends on the earlier of:

            **(1)**    The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
            **(2)**    The date when business is resumed at a new permanent location.

. . .

    **6.**    "Suspension" means:

        **a.**    The slowdown or cessation of your business activities; . . .

**Exhibit C** to Altizer Decl., Form CP 00 30 10 12.

## III.    LEGAL AUTHORITY

### A.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate when the pleadings, affidavits, depositions, and admissions indicate that there are no genuine issues of material fact and a party is entitled to

MOTION FOR SUMMARY JUDGMENT– 14

judgment as a matter of law. FRCP 56.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L.Ed. 2d 265, 106 S.Ct. 2548 (1986). The party that brings a motion for summary judgment bears the burden of establishing the absence of an issue of material fact.  Once the moving party has made the requisite showing, the non-moving party then bears the burden of establishing that there is a question of fact pertinent to an essential element of his case.  *Celotex, supra.*

Summary judgment should be granted if the non-moving "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra.*  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex, supra*, at 322-23.

**B.**  **Policy Interpretation And Burden Of Proof**

In Oregon, "[t]he primary and governing rule of the construction of insurance contracts is to ascertain the intention of the parties." *Totten v. New York Life Ins. Co.*, 298 Or 765, 770 (1985).  The court determines the intention of the parties based on the terms and conditions of the insurance policy.  *Hoffman Const. Co. of Alaska v. Fred S. James & Co., of Oregon*, 313 Or 464, 469 (1992).  Similarly, ORS 742.016 provides that "[e]xcept as provided in ORS 742.043 (relating to oral binders), every contract of insurance shall be construed according to the terms and conditions of the policy." *See also Allianz Global Risks v. ACE Property & Cas. Ins. Co.*, 367 Or 711, 734 (2021) (explaining how ORS 742.016(1) applies to interpretation of insurance policies by courts in Oregon).

The interpretation of an insurance policy contract is a question of law for the court. *Allianz Global Risks*, 367 Or at 736. Policy terms are interpreted from the "understanding of the

ordinary purchaser of insurance." *Totten*, 298 Or at 771. If a phrase or word is defined in the policy, the court will apply that definition. *Gonzales v. Farmers Ins. Co. of Oregon*, 345 Or 382, 387 (2008). Terms not defined in the policy will be interpreted by first examining the ordinary meaning of the term. *Capitol Specialty Ins. Co. v. Chan & Lui, Inc.*, 248 Or App 674, 680 (2012). The court may also consider "the particular context in which the term is used in the policy and the broader context of the policy as a whole." *Id.* "If the term has only one plausible interpretation, [the court] will apply that interpretation and conduct no further analysis." *Id.* The Court cannot rely on extrinsic evidence to interpret provisions contained in an insurance policy. *Allianz Global Risks*, 367 Or at 734. Likewise, self-serving and/or subjective interpretations of a policy are irrelevant and cannot be considered by the Court. *See Nat'l Chiropractic Mut. Ins. Co. v. Morgan*, 116 Or App 196, 203 (1992); *see also Leach v. Scottsdale Indem. Co.*, 261 Or App 234, 245 (2014).

In Oregon, the insured has the initial burden to prove that coverage is triggered under an insurance policy's insuring agreement. *Employers Ins. of Wasau v Tektronix, Inc.*, 211 Or App 485, 509 (2007) (citing *Lewis v. Aetna Ins. Co.,* 264 Or 314, 316, 505 P2d 914 (1973)). The insurer has the burden of proof when relying on an exclusion contained in the policy. *Id.*; *see also ZRZ Realty Co. v. Beneficial Fire and Cas. Ins. Co.,* 349 Or 117, 127 (2010), *modified on recons. on other grounds*, 349 Or 657 (2011) (citing *Stanford v. American Guaranty Life Ins. Co.*, 280 Or 525, 527 (1977)).

**C.    The Covid-19 Pandemic And Governmental Response Thereto Did Not Cause Direct Physical Loss Of Or Damage To The Insured Premises Or Any Other Property.**

"Direct physical loss of or damage to property" is required for coverage under the FMIC Policy's Business Income, Extra Expense, and Civil Authority coverages. **Ex. C** to Altizer Decl.,

Form CP 00 30 10 12.  Zeco does not allege that the COVID-19 virus has been detected at its insured locations. Dkt. 1. There are no other allegations or evidence of any direct physical loss of or damage to property. This is fatal to Zeco's claim for coverage under the FMIC policy.

**1.    Zeco Cannot Show It Sustained Direct Physical Loss Of Or Damage To Any Property.**

This Court has already held that under Oregon Law, the COVID-19 pandemic and governmental orders issues in response thereto do not constitute direct physical loss of or damage to property, particularly in the context of a restaurant that is limited to take out operations only. *Dakota Ventures, LLC, d/b/a Kokopelli Grill and Coyote BBQ Pub v. Oregon Mut. Ins. Co.,* Case No. 3:20-cv-00630-HZ, 2021 US Dist LEXIS 151955 (D Or Aug. 11, 2021); *Nue v. Or. Mut. Ins. Co.,* No. 3:20-cv-01449-HZ, 2021 US Dist LEXIS 169054 (D Or Sept. 4, 2021); *Nari Suda Llc v. Or. Mut. Ins. Co.,* No. 3:20-cv-01476-HZ, 2021 US Dist LEXIS 169051; (D Or Sept. 6, 2021); *Hillbro LLc v. Or. Mut. Ins. Co.,* No. 3:21-cv-00382-HZ, 2021 US Dist LEXIS 169052 (D Or Sept. 7, 2021); *N. Pac. Mgmt. v. Liberty Mut. Fire Ins. Co.,* Case No. No. 3:21-cv-00404-HZ 2021 US Dist LEXIS 169050 (D Or Sept. 7, 2021).

In *Dakota,* a plaintiff-restauranteur asserted claims for breach of contract and declaratory relief against its insurer under a businessowners policy that covered  "direct physical loss or damage to Covered Property" and "direct physical loss of or damage to property." *Dakota,* 2021 US Dist LEXIS 151955 at *3. This Court held that coverage for the plaintiff's losses arising from the COVID-19 pandemic and governmental orders issued in response thereto was unavailable because the plain meaning of the phrase "direct physical loss of or damage to property" required "Plaintiff to lose of possession of its property or demonstrate a physical alteration in the condition of its property for coverage to apply[:]"

MOTION FOR SUMMARY JUDGMENT– 17

**Oregon courts have construed the phrase "direct physical loss of or damage to property" and similar phrases to require some degradation in the condition of the property to invoke coverage**. In *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, this Court emphasized that a policy that covers "direct physical loss"—and the inclusion of the word "physical" in particular—covers only direct damage and does not extend to consequential damages. 1999 US Dist LEXIS 11873, 1999 WL 619100, at *4. Applying that construction, the Court held that the insurance policy of the plaintiff, a clothing manufacturer whose property had suffered water intrusion damage resulting in water damage to some of its merchandise, could recover only for the damage to the clothing directly damaged by the water intrusion. 1999 US Dist LEXIS 11873, [WL] at *7. The court ruled that only articles of clothing that were "physically changed in some manner" either by the water intrusion or the resulting mold and mildew spores were covered under the terms of the policy. 1999 US Dist LEXIS 11873, [WL] at *7-8.

The Oregon Supreme Court held in the context of a liability insurance policy that including the word "physical" in the terms of the policy excluded coverage for consequential or intangible damages. *Wyoming Sawmills*, 282 Ore. at 406.

…

Even assuming that the virus was present in Plaintiff's restaurants, Plaintiffs' property has not been lost or damaged by the virus in a manner that required it to suspend operations in order to conduct repairs or replace the property.

…

Construing the allegations in the light most favorable to Plaintiff, **the losses alleged by Plaintiff are purely economic and not the result of any "direct physical loss of or damage to property." Plaintiff's pleadings attempt to characterize the harmful effects of government closure orders issued in response to the public health crisis as "physical loss" or "physical damage," but no physical loss of or physical damage to its property occurred. As a result, no coverage exists under the Business Income and Extra Expense provisions of the Policy.**

…

*Dakota*, 2021 US Dist LEXIS 151955 at ** 19-23. (citation original) (emphasis added).

This Court applied the same analysis in *Nue*, *Nari*, *Hillbro*, and *North Pacific*, which likewise involved restaurant owners claiming direct physical loss under substantively similar policy language. In each case, this Court concluded that the plain and unambiguous meaning of

MOTION FOR SUMMARY JUDGMENT– 18

"direct physical loss of or damage to property" requires a "physical alteration in the condition of [plaintiff's] property for coverage to apply." *Hillbro,* 2021 US Dist LEXIS 169052 at *22; *Nue*, 2021 US Dist LEXIS 169054 at *20; *N. Pac. Mgmt.*, 2021 US Dist LEXIS 169050 at *13; see also, *Nari*, 2021 US Dist LEXIS 169051 at 810. Moreover, this Court held that loss of functionality or inability to use undamaged dining rooms and related property is not covered:

> i.      The Policy does not cover a "loss of functionality" or inability to use undamaged dining rooms and related property for their intended purpose.
>
> Plaintiff argues that the Court should apply definitions of the word "loss" that include loss of use or deprivation and find coverage because Plaintiff was deprived of using its dining room for serving dine-in customers. But that argument ignores the context in which those words appear in the Policy. "Loss" and "damage" do not appear in isolation. Those words are modified by the word "physical." Thus, even if in isolation the meaning of loss includes loss of use or deprivation, the modification of those words by the word "physical" means that the insured must demonstrate a loss of use or deprivation that is physical in nature, which requires that the loss involve a loss of possession or presence of the property…
>
> The selective definition of "loss" that Plaintiff urges the Court to apply would render the word "physical" surplusage and is contrary to longstanding insurance law doctrine which provides that all-risk insurance policies are intended to cover damage to property, not economic loss…
>
> Even affording Plaintiff the most liberal reading of its allegations, its Complaint alleges only that government orders restricted the manner in which its restaurant may serve customers, while leaving the property itself in Plaintiff's possession, unharmed, and undamaged. As a result, Plaintiff has failed to allege a direct physical loss of or damage to its covered property.

*Hillbro,* 2021 US Dist LEXIS 169052 at **29-31, (internal citation omitted); See also, *Nue*, 2021 US Dist LEXIS 169054 at **27-29; see also, *Nari*, 2021 US Dist LEXIS 169051 at pp. 18-20.

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

Similarly, Judge Barbara Rothstein of the Western District of Washington thoroughly analyzed the meaning of "direct physical loss" in the context of claims arising from the COVID-19 pandemic:

> In determining the meaning of "loss" as used in these insurance policies, the Court turns to its common definition. "Loss" is defined as "the act or fact of being unable to keep or maintain something" or "the act of losing possession" of something. "Possess," in turn, is commonly defined as "to have and hold as property," similar to "own," or to "seize and take control of." Thus, "loss of" is best understood as no longer being able to own or control the property in question. When combined with "direct" and "physical" the Court determines that, in its common usage, "loss" means that **the alleged peril must set in motion events which cause the inability to physically own or manipulate the property, such as theft or total destruction.**
>
> …
>
> This Court finds that, in arguing that direct physical loss covers loss of income in these circumstances, Plaintiffs conflate physical loss with non-physical loss of use. **Detrimental economic impact, however, does not trigger coverage under the property insurance here at issue.** As numerous courts have held, "economic business impairments caused by COVID-19 safety orders do not fall within the scope of coverage."
>
> …
>
> Terminology aside, the result is the same. In order to trigger coverage under a direct physical loss theory, an outside peril must cause an inability to interact with the property because of an alteration to its physical status. COVID-19, and more specifically the Governor's Proclamations, may have limited the uses of the property by preventing certain indoor activities previously conducted on the premises, but they did not cause dispossession of the buildings, chairs, dental tools, etc. As other courts have adeptly summarized, the "property did not change. The world around it did."
>
> Interpreting direct physical loss to include only tangible dispossession aligns with insurance law doctrine which holds that all-risk contracts are intended to cover damage to property, not economic loss.
>
> …

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

> **This Court joins the numerous courts across the country that have held that COVID-19 does not trigger direct physical loss or damage.**

*Nguyen, et al. v. Travelers Cas. Ins. Co of Amer., et al.*,  2021 US Dist LEXIS 101772 at *28-32 (WD Wash 2021) (emphasis added) (internal citation omitted).

In fact, as this Court has acknowledged, majority of courts across the country agree that losses arising from the COVID-19 pandemic and governmental orders issued in response thereto do not constitute "direct physical loss." *See, Hillbro,* 2021 US Dist LEXIS 169052 at *27; *Nue*, 2021 US Dist LEXIS 169054 at *25; *N. Pac. Mgmt.*, 2021 US Dist LEXIS 169050 at **17-19; see also, *Nari*, 2021 US Dist LEXIS 169051 at p. 16.

For example, the Southern District of Florida held that a that COVID-19 does not cause "direct physical loss of or damage to" property under either a loss of use theory or physical contamination theory. *Town Kitchen LLC v. Certain Underwriters at Lloyd's*, 2021 US Dist LEXIS 36191 (SD Fla 2021). Town Kitchen, a restaurant owner like Zeco, argued that its restaurant became unsuitable for its intended purpose due to the high transmission risk of COVID-19 and that the physical presence of COVID-19 directly and physically damaged its property *Id.* at *9. The court rejected both arguments:

> Clearly, the economic losses caused by periods of reduced or no operations are intangible losses that do not result in a changed physical structure. Under their loss of use theory, Town Kitchen is attempting to shoehorn their losses stemming from the inability to use their restaurant at full capacity into something covered by their insurance policy merely because they are caused by a physical virus—but coronavirus particles damage lungs, they do not damage buildings.
> …
>
> At this point in the pandemic, it is widely accepted that life can go on with hand sanitizer and disinfecting wipes. Indeed, Town Kitchen has continued to operate a take-out business from the very premise they argue has suffered direct physical loss…Because the "repairs" here consist of the routine disinfecting with which we are

MOTION FOR SUMMARY JUDGMENT– 21

> all familiar and cleaning costs are not tangible, physical losses but
> rather economic losses, the Court rejects the Plaintiffs "physical
> contamination" theory…

*Id.* at **11-13, 18-19.

The Southern District of Illinois, Eastern District of Michigan, and Central District of California have held likewise. *TJBC, Inc. v. The Cincinnati Ins. Co.,* 2021 US Dist LEXIS 13007 at *3 (SD Ill 2021) (holding that "direct physical loss" unambiguously requires tangible loss, not merely loss of use or diminishment in value); *Brown Jug, Inc. v. Cincinnati Ins. Co.*, 2021 US Dist LEXIS 100063, at *13-14 (ED Mich 2021) (holding that cleaning supplies, rearranging furniture, and economic losses do not constitute "tangible, physical losses as required under the Policy"); *10E, LLC v. Travelers Indem. Co.*, 2020 US Dist LEXIS 165252, at *13-15 (CD Cal Sept. 2, 2020) (holding that "direct physical loss" requires "the permanent dispossession of something," as opposed to a temporary restriction of the use of property).

Here, like *Dakota, Nue*, *Nari*, *Hillbro*, and *North Pacific,* the FMIC Policy provides coverage for the necessary suspension of operations caused by "direct physical loss of or damage to property." **Ex. C** to Altizer Decl., Form CP 00 30 10 12. Zeco alleges that as a result of Governor Brown's orders issued in response to COVID-19, Zeco was unable to operate its business and could not use its business property for its intended purposes. Dkt. 1 at p. 4.

Under Oregon law, Zeco has not sustained "direct physical loss" required to trigger coverage under the FMIC Policy. Zeco's business property did not undergo any physical alteration or degradation. Rather, Zeco's losses are purely economic in nature and are therefore not covered under the FMIC Policy. *Dakota,* 2021 US Dist LEXIS 151955 at **19-23. *Hillbro,* 2021 US Dist LEXIS 169052 at **28-29; *Nue*, 2021 US Dist LEXIS 169054 at *26; *N. Pac. Mgmt.*, 2021 US Dist LEXIS 169050 at *19; see also, *Nari*, 2021 US Dist LEXIS 169051 at p.

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

18. See also, *Nguyen,* 2021 US Dist LEXIS 101772 at *28-32. Moreover, this Court has already held that loss of functionality of undamaged dining rooms and related property do not constitute "direct physical loss." *Dakota,* 2021 US Dist LEXIS 151955 at **25-26; *Hillbro,* 2021 US Dist LEXIS 169052 at **29-31; *Nue*, 2021 US Dist LEXIS 169054 at **27-29; *Nari*, 2021 US Dist LEXIS 169051 at pp. 18-20. As such, coverage for Zeco's alleged losses is simply unavailable under the unambiguous terms of the FMIC Policy.

> **2.    The FMIC Policy's Reliance On The "Period of Restoration" For Defining Coverage For Business Interruption Losses Further Demonstrates That Actual Physical Harm, Alteration, Or Dispossession To Tangible Property Is Required.**

When interpreting an insurance policy, Oregon courts are instructed to consider "the particular context in which the term is used in the policy and the broader context of the policy as a whole." *Capitol Specialty Ins. Co. v. Chan & Lui, Inc.*, 248 Or App 674, 680 (2012).

The FMIC Policy provides coverage for "the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'." **Ex. C** to Altizer Decl., Form CP 00 30 10 12. The "Period of Restoration" is defined as follows:

> **a.**    Begins
>
> > **(1)**    72 hours after the time of direct physical loss or damage for Business Income Coverage; or
> > **(2)**    Immediately after the time of direct physical loss or damage for Extra Expense Coverage;
> >
> > Caused by or resulting from any Covered Cause of Loss at the described premises; and
>
> **b.**    Ends on the earlier of:
>
> > **(1)**    The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
> > **(2)**    The date when business is resumed at a new permanent location.

MOTION FOR SUMMARY JUDGMENT– 23

**Ex. C** to Altizer Decl., Form CP 00 30 10 12.

When read as a whole, the FMIC Policy plainly requires a loss that either (1) must be repaired, rebuilt, or replaced, or (2) a loss such that the insured's business must resume at a new permanent location. Under Oregon law, this Court held that a substantively identical definition of the "Period of Restoration" provides clear context for the meaning of "direct physical loss:"

> **The definition of "period of restoration" also supports the Court's interpretation that loss of or damage to tangible property must occur to invoke coverage under the Policy**. The Business Income and Extra Expense provisions of the Policy provide coverage for certain losses "during the 'period of restoration.'" The "period of restoration" starts seventy-two hours after the "physical loss or damage" occurs and ends on "[t]he date when the premises should be repaired, rebuilt or replaced with reasonable speed and similar quality" or when the insured's "business is resumed at a new permanent location." **That description of "period of restoration" implies that Plaintiff must lose or suffer physical damage to its tangible property which requires repair or replacement in order to invoke coverage.**

*Dakota,* 2021 US Dist LEXIS 151955 at \*\*37-38 (internal citation omitted)(emphasis added). See also, *Hillbro,* 2021 US Dist LEXIS 169052 at \*\*40-41 ("The definition of "period of restoration" also supports the Court's interpretation that loss of or damage to tangible property must occur to invoke coverage under the Policy"); *Nue*, 2021 US Dist LEXIS 169054 at \*\*38; see also, *Nari*, 2021 US Dist LEXIS 169051 at \*\*11-13.

The Northern District of Ohio, District of Maryland, and Eastern District of Michigan held likewise. *Bridal Expressions LLC v. Owners Ins. Co*., 2021 US Dist LEXIS 65716 (ND Ohio 2021) ("[a]pplying the plain meaning of the words 'repair,' 'rebuild,' and 'replace' suggests that the coverage period will not begin until there is some tangible harm to property"); *Bel Air Auto Auction, Inc. v. Great Northern Ins. Co.,* 2021 US Dist LEXIS 72154 at \*\*34-37 (D Md 2021)("[i]n order for the period of restoration definition to have some effect in this case, [the plaintiff] would seemingly need to argue that cleaning surfaces of a property constitutes repair or replacement"); *Brown Jug*, 2021 US Dist LEXIS 100063, at \*13-14 (acknowledging that when

MOTION FOR SUMMARY JUDGMENT– 24

read as a whole, substantively similar policy language requiring physical loss or physical damage "seamlessly compliments the policy's 'period of restoration' provision").

Here, the FMIC Policy's definition of the "Period of Restoration" further demonstrates that covered business interruption losses require physical alteration of tangible property. Because there is no physical loss or damage to Zeco's property, there is no "Period of Restoration" over which Zeco could have sustained losses. As a result, there is no coverage owed under the FMIC Policy.

**D.    Any Purported "Direct Physical Loss Of Or Damage To" Property Conceivably Caused by COVID-19 Is Excluded.**

Even if Zeco was somehow able to establish that one of the Business Interruption coverages was triggered because it suffered direct physical loss or damage to its premises, the FMIC Policy's Virus Exclusion would operate to preclude coverage. The FMIC Policy provides as follows:

> **B.**    We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

**Ex. C** to Altizer Decl., Form CP 01 40 07 06.

**1.    The Virus Or Bacteria Exclusion Is Unambiguous And Plainly Applies Here**

Under Oregon law, the Virus Exclusion must be enforced based on the ordinary meaning of its terms. *Totten*, 298 Or at 771; *Capitol Specialty Ins. Co.*, 248 Or App at 680; *Hoffman Const. Co. of Alaska*, 313 Or at 469; *Allianz Global Risks*, 367 Or at 734. While this specific exclusion has not been addressed by Oregon Courts, courts in other jurisdiction have upheld and enforced similar provisions to preclude coverage in analogous contexts. *See, e.g., See, e.g., Sentinel Ins. Co., Ltd. v. Monarch Med. Spa, Inc.*, 105 F Supp 3d 464, 472 (ED Pa 2015) (Court enforced a

MOTION FOR SUMMARY JUDGMENT– 25

virus/bacteria exclusion with similar language to preclude coverage of a loss caused by Group A Streptococcus infection); *Alexis v. Southwood L.P.*, 732 So 2d 100, 102 (La Ct App 2001) (communicable disease exclusion barred coverage for diseases transmitted from exposure to raw sewage.); *Paternostro v. Choice Hotel Int'l Servs. Corp.*, No. 13-0662, 2014 US Dist LEXIS 161157, at *73-75 (ED La 2014) (dismissing coverage claims under policies containing bacteria exclusions for loss caused by transmission of Legionella and Pseudomonas, which are known to be bacteria).

Dozens of courts across the country have also confirmed that virus exclusions, similar to or the same as the FMIC Policy's Virus Exclusion, are not ambiguous and apply to preclude coverage for Business Interruption claims related to the COVID-19 pandemic and resulting government responses. *See, e.g., Causeway Auto., LLC v. Zurich Am. Ins. Co.*, 2021 US Dist LEXIS 25325 (D NJ 2021) ("[B]ecause the Court finds that the Virus Exclusion is unambiguous and that COVID-19 was the proximate cause of Plaintiffs' losses, I find that the Virus Exclusion bars coverage."); *Mashallah, Inc. v. W. Bend Mut. Ins. Co.,* 2021 US Dist LEXIS 31816 (ND Ill 2021) (same); *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*, 498 F Supp 3d 1233 (CD Cal 2020) (rejecting argument that the pandemic is a distinct peril from the virus); *Colby Rest. Grp., Inc. v. Utica Nat'l Ins. Grp.,* 2021 US Dist LEXIS 60135 (D NJ 2021) (holding that virus exclusions are unambiguous and preclude coverage under Florida, Washington, and New Jersey law).

The language of the Virus Exclusion is clear and simple. There is no plausible alternative interpretation of the exclusion. It applies to preclude coverage for losses caused by or resulting from a virus that induces or is capable of inducing physical distress, illness or disease. SARS-CoV-2 is unquestionably a virus capable of inducing physical distress, illness or disease. This

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

virus caused the COVID-19 pandemic and was the direct and express justification for the government orders that allegedly caused Zeco's losses. Accordingly, as the courts held in the cases discussed above, the exclusion applies and Zeco is not entitled to any coverage under the FMIC Policy.

### 2. Coverage Is Excluded Because The COVID-19 Virus Is The Efficient Proximate Cause Of The Claimed Loss

Oregon has adopted the "efficient proximate cause" rule, which applies in the context of determining whether a claimed loss is subject to an exclusion contained in an insurance policy. *See Naumes, Inc. v. Landmark Ins. Co.*, 119 Or App 79, 82 (1993) (citing *Gowans v. N.W. Pac. Indem. Co.*, 260 Or 618, 621 (1971)).  "The 'efficient proximate cause' of a loss is the active and efficient cause that sets in motion a train of events which bring about a result without the intervention of any force, starting and working actively and efficiently from a new and independent source." *Id.* (citing *Couch on Insurance 2d*, § 74:711 (Rev ed 1983)).  Under this rule, when a covered peril is the efficient proximate cause of the loss, coverage is afforded even if excluded perils were subsequent factors in the chain of causation. Conversely, "[i]f one of the *excluded perils*…is the efficient proximate cause [of the loss], however, [the insurer] is not liable." *See Great Amer. Alliance Ins. Co. v. SIR Columbia Knoll Assocs. L.P.*, 484 F Supp 3d 946, 964 (2020) (emphasis original).

While determining the efficient proximate cause of a loss is generally a question of fact, this Court has granted summary judgment denying coverage based on the application of an exclusion when the evidence supported one efficient proximate cause of the loss. *See Point Triumph Condo. Ass'n v. Amer. Guar. And Liability Ins. Co.*, 2000 US Dist LEXIS 24718 (D Or 2000); *Great Amer. Alliance Ins. Co.*, 484 F Supp 3d at 966-967.

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

There is very little case law in Oregon applying the efficient proximate cause rule. No Oregon court has issued any rulings regarding the application of a virus exclusion in any context. However, District Courts in the Ninth Circuit (along with the rest of the country) have already held that virus exclusions bar coverage under the present circumstances because the efficient proximate cause of the losses claimed by business arising from COVID-19 and the resulting government orders is a virus.

In *Nguyen, supra*, the Western District of Washington applied Washington's efficient proximate cause rule to COVID-19 business interruption claims as follows:

> In this case, the dispute comes down to whether COVID-19 or the Governor's Proclamations predominately caused the businesses' losses. If the virus was the efficient proximate cause of the losses, the Virus exclusion would apply, barring coverage. If, as Plaintiffs argue, the Proclamations were the true efficient proximate cause of the business losses, the exclusion would not apply (so the argument goes) because the Proclamations are not an excluded cause under the Virus exclusions.

> Determination of the efficient proximate cause is ordinarily a task for the jury but, "when the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion," then determination of efficient proximate cause is a question of law for the Court.

> Here, the underlying facts are undisputed and the line of causation is clear: COVID-19 caused the Governor to issue the Proclamations, which forced Plaintiffs to curtail their business operations. Under such circumstances, the exclusion barring coverage resulting from the virus applies.

2021 US Dist LEXIS 101772 at *43-44 (internal citations omitted).

Federal courts in California have almost universally enforced virus exclusions to preclude coverage for these claims, finding that Governor Newsom's shut down orders were issued in direct response to the COVID-19 virus. *See, e.g., BA LAX, LLC v. Hartford Fire Ins. Co.*, 2021 US Dist LEXIS 10919, at *11 (CD Cal 2021) ("Here, there is no genuine dispute that the activity of a virus,

MOTION FOR SUMMARY JUDGMENT– 28

namely COVID-19, set government restrictions in motion, and is therefore the efficient proximate cause of Plaintiffs' claimed losses."); *Boxed Foods Co., LLC v. Cal. Capital Ins. Co.*, 497 F Supp 3d 516 (ND Cal 2020); *Franklin EWC, Inc. v. The Hartford Financial Services Group, Inc.* 488 F Supp 3d 904, 908 (2020) (Describing the plaintiff's theory that its losses were caused by the government shut down orders as opposed to a virus as "Nonsense"). The District of Arizona has followed California's lead on this issue as well. *See Border Chicken AZ LLC v. Nationwide Mut. Ins. Co.*, 2020 US Dist LEXIS 217649, at *11-12 (D Ariz 2020) (citing California federal court decisions to support application of virus exclusion in this context).

Zeco attempts to avoid the Virus Exclusion and establish direct physical loss by claiming that Governor Brown's Executive Orders were the efficient proximate cause of a suspension of its business operations and resulting losses. Dkt. 1, ¶¶ 12-16. However, these orders were plainly issued in direct response to the presence and spread of COVID-19 virus in State of Oregon. In fact, Governor Brown's orders were, by their express terms, issued for the exact purpose of protecting the public from the COVID-19 virus:

> In order to ensure the state is fully prepared for COVID-19 and that state and local authorities have the resources needed to respond to COVID-19, a declaration of emergency is necessary.

**Ex. A** to Altizer Decl.

> In order to slow the spread of COVID-19, to protect Oregonians who are at highest risk for contracting the disease, and to help avoid overwhelming local and regional healthcare capacity, I find that immediate implementation of social distancing and community mitigation measures are necessary. The purpose of this Executive Order is to reduce person-to-person interaction with the goal of restricting transmission.

**Ex. B** to Altizer Decl.

MOTION FOR SUMMARY JUDGMENT– 29

There can no debate that this virus resulted in the need for Governor Brown's orders limiting certain business activities. There would be no justifiable purpose for such economically damaging restrictions without the presence, spread and activity of a dangerous virus amongst the community. Accordingly, no facts are in dispute and a reasonable juror could only conclude that the "predominant," "initiating" or "efficient proximate" cause of the losses alleged by Zeco is the SARS-CoV-2 virus.

Moreover, Governor Brown's Executive Orders did not and could not cause any harm or alteration to any physical component of Zeco's insured premises. They also did not prevent Zeco from selling food and beverages to customers or using its locations for that purpose. Rather, the orders merely limited the methods in which Zeco could provide food service to its customers to take-out and delivery. Accordingly, Zeco never lost possession of or the ability to access and use its locations to sell food and beverages. The FMIC Policy simply does not provide coverage for this type of situation. *See Brothers, Inc. v. Liberty Mut. Fire Ins. Co.*, 268 A2d 611, 612 (D.C. 1970) (insured's business interruption losses resulting from curfew and municipal regulations in response to rioting were not covered where there was no physical damage to a premises); *Newman Myers Kreines Gross Harris, supra*.

Nevertheless, even if Zeco's arguments had merit, which they do not, the FMIC Policy excludes coverage for loss caused by or resulting from "[a]cts or decisions, including the failure to act or decide, of any person, group, organization or governmental body" (hereinafter the Acts or Decisions Exclusion"). **Ex. C** to Altizer Decl., Form CP 10 30 09 17. In *Florexpo LLC v. Travelers Prop. Cas. Co. of America*, 2021 US Dist LEXIS 43056 (SD Cal 2021), the Court held that the Acts or Decisions Exclusion precludes coverage for losses based on the same causation theory alleged by Zeco herein:

MOTION FOR SUMMARY JUDGMENT– 30

Here, the Acts or Decisions Exclusion is plainly stated and free of jargon. Additionally, the Acts or Decisions Exclusion is similar to standard insurance policy exclusions multiple courts have previously analyzed and found unambiguous…The Court joins the majority of courts analyzing similar clauses and finds that the language of this exclusion is unambiguous, and thus the Court will interpret the exclusion based on its plain language.
…

[T]he Court finds that the Acts or Decisions Exclusion applies to exclude Plaintiffs' claim for two reasons. First, the governmental action was the direct cause of the loss for which Plaintiffs seek relief in the Coverage Claim, bringing the claim within the Acts or Decisions Exclusion. Second, the Court refuses to read a negligence limitation into the Exclusion, where such language does not exist and where courts interpreting similar exclusions have not limited the clause to only negligent acts. Defendant has conclusively demonstrated the Exclusion applies.

2021 US Dist LEXIS 43056  at *16-17, 20-21 (internal citations omitted).

Because the efficient proximate cause of the losses alleged by Zeco was a virus, and all other alleged causes of loss are excluded under the FMIC Policy, Business Interruption coverage for Zeco's claim is precluded under the FMIC Policy and Oregon law. Therefore, FMIC's Motion for Summary Judgment should be granted.

**E.** **No Civil Authority Coverage Is Available Because There Is No Direct Physical Loss To Any Property And No Civil Authority Prohibited Access To Any Property**

Civil Authority coverage provides coverage for business income and extra expenses caused by an action of a Civil Authority that "prohibits access" to the insured premises because of direct physical loss of or damage to property other than the insured premises. **Ex. C** to Altizer Decl., Form CP 00 30 10 12. As discussed at length above, this Court has already ruled that under Oregon Law, the COVID-19 pandemic and governmental orders issues in response thereto do not constitute direct physical loss of or damage to property in the context of a restaurant limited to take out operations only. *Dakota Ventures, supra. Nue, supra; Nari, supra; Hillbro, supra; N.*

MOTION FOR SUMMARY JUDGMENT– 31

*Pac. Mgmt., supra.* Moreover, even if there was "direct physical loss" to property other than Zeco's property, which there was not, Civil Authorities coverage would nonetheless be unavailable because Governor Brown's Orders did not prohibit access to Zeco's business property.

The purpose of the civil authority policy provision is to provide coverage to insureds who suffer losses caused by government action prohibiting access to the insured's property because of direct physical losses or damage to nearby property other than the insured property. *See Dickie Brennan & Co. v. Lexington Ins. Co.,* 636 F3d 683 (2011); *see also United Air Lines v. Ins. Co. of the State of Pa., infra*, 439 F3d 128. Here, there is no evidence or allegation that Zeco's business was forced to cease operations because of direct physical loss of or damage to property of another. There is no evidence of physical loss or damage to any property causing any loss to Zeco. Further, there is no evidence that Governor Brown issued her orders because of direct physical loss or damage to any property. Rather, the orders were plainly designed to curb the spread of COVID-19 and reduce potential impact on hospitals. *See* Exs. 1 and 2.

Once more, this Court has already held that under Oregon Law, substantively similar Civil Authority coverage is unavailable for a restaurant owner's alleged losses arising from the COVID-19 pandemic and governmental orders issues in response thereto. Here, like *Dakota¸* "direct physical loss of or damage to property" is required to invoke coverage under the Civil Authority Coverage:

> i.      Meaning of "direct physical loss of or damage to property"
> …
>
> The Civil Authority provision covers business income when an action of civil authority prohibits access to the insured's property due to "direct physical loss of or damage to property" at a location other than the insured's property. Thus, whether those provisions

MOTION FOR SUMMARY JUDGMENT– 32

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

cover Plaintiff's losses turns on the meaning of "direct physical loss of or damage to property."
…

The Civil Authority provision extends coverage for loss of Business Income and necessary Extra Expense "caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss." Thus, the Civil Authority provision requires that an action of civil authority prohibited access to Plaintiff's restaurants due to the loss, destruction, dispossession of or injury to property other than Plaintiff's property for coverage to apply.

*Dakota,* 2021 US Dist LEXIS 151955 at **16-18 (internal citations omitted). See also, *Hillbro,* 2021 US Dist LEXIS 169052; *Nue,* 2021 US Dist LEXIS 169054; *Nari,* 2021 US Dist LEXIS 169051; *N. Pac. Mgmt.*, 2021 US Dist LEXIS 169050 at *12.

Furthermore, this Court found that even if *Dakota* involved direct physical loss of or damage to property sufficient to trigger Civil Authority Coverage, coverage was nonetheless unavailable because there was no prohibition of access to premises. This Court has already rejected Zeco's argument that governmental orders issued in response to the COVID-19 pandemic prohibited access to the insured premises:

Plaintiff argues that the plain meaning of the word "prohibit" includes hindering, difficulty, or interruption of access. In support of that argument, Plaintiff relies only on *Studio 417 v. Cincinnati Insurance Company*, in which a Missouri district court found that the action of civil authority that prohibited indoor dining was sufficient prohibition of access to trigger business interruption coverage. However, the court's decision rested in part on the plaintiffs' allegation that the virus "attached to and deprived Plaintiffs of their property[.]" The court's decision also rested in part a binding Eighth Circuit decision applying Missouri law that interpreted risks of direct physical loss to include the danger of direct physical loss. **Oregon courts have not adopted a similarly expansive interpretation of the phrase "direct physical loss" to include the danger of direct physical loss.** Applying *Hampton Foods*, the *Studio 417* court found that a covered cause of loss had occurred. The *Studio 417* court's conclusion that the plaintiffs had plausibly alleged a claim for Civil Authority coverage stemmed from its conclusion that a covered cause of loss had occurred. **This**

> **Court reaches the opposite conclusion, based on Oregon law, and finds that no Covered Cause of Loss occurred because no direct physical loss occurred that resulted in the loss of or damage to Plaintiff's property.** Thus, *Studio 417* is distinguishable and, **because no Covered Cause of Loss occurred, the Court need not determine whether a partial prohibition of access is sufficient to trigger Civil Authority coverage** as Plaintiff alleges.
>
> Plaintiff has failed to plausibly allege a prohibition of access—whether by action of civil authority or by means of a physical barrier caused by nearby physical damage—sufficient to trigger coverage under the Civil Authority provision…

*Dakota,* 2021 US Dist LEXIS 151955 at **34-35 (internal citations omitted)(emphasis added)

The Western District of Washington likewise held that Civil Authorities coverage was unavailable because the COVID-19 pandemic and governmental orders issued in response thereto do not cause direct physical loss of or damage to property:

> The archetypal civil authorities that trigger coverage under such a provision are ordinances regulating construction, repair, or right to use property (including destruction of the property), such as evacuation orders during a natural disaster.
>
> The Court finds that the Civil Authority provisions do not provide coverage in these circumstances. First, where the Civil Authority provision is premised on an initial trigger of coverage, there are no independent grounds to find coverage as the Court has found no trigger because COVID-19 does not cause direct physical loss of or damage to insured property. Second, where the Civil Authority provision incorporates the requirement for physical loss or damage to a neighboring building, there is no coverage because the Court has already found COVID-19 does not cause such loss or damage. …these two deficiencies defeat coverage under every permutation of the Civil Authority provision in these cases. This view has prevailed among federal courts examining whether similar Civil Authority provisions provide coverage as a result of COVID-19.).

*Nguyen,* 2021 US Dist LEXIS 101772 at **40-41 (internal citations omitted)

Moreover, this country's seminal case on Civil Authorities coverage upholds the requirement for direct physical loss. In *United Air Lines v. Ins. Co. of the State of Pa.*, 439 F3d

128 (2nd Cir 2006), the Second Circuit found that the governmental orders shutting down the airport after 9/11 attacks on the pentagon were based on the fear of future terrorist attacks and had nothing to do with physical damage to the airport itself. The Southern District of Texas adopted this decision in an unpublished opinion, applying the *United Air Lines* reasoning to hold that shut down orders issued due to the fear of hurricane damage, as opposed to actual physical loss or damage, did not trigger Civil Authorities coverage. *S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp*., H-06-4041, 2008 US Dist LEXIS 11460 (SD Tex Feb.15, 2018

These holdings are clear. The purpose of Civil Authority coverage is to allow insureds to recover lost business income resulting from a government ordered business shutdown due to direst physical loss or damage to other property. For example, when firefighting efforts at one building precludes access to neighboring properties. Civil Authority coverage does not apply when business is shut down for reasons unrelated to actual physical loss or damage.

As discussed above, Zeco is unable to show "direct physical loss" to any property under Oregon law. Likewise, Zeco is unable to show any prohibition of access. Rather, Zeco asserts the same factual scenario and theory of coverage that this Court rejected in *Dakota.* Governor Brown's Orders were simply not issued in response to direct physical loss to any property. Instead, they were explicitly issued to protect the public health and prevent the spread of COVID-19. Again, the threat of a microscopic virus spreading to and infecting people and resulting orders limiting business activities to prevent the spread of such virus do not constitute physical loss of or damage to property. There can be no reasonable debate on this point. Moreover, Governor Brown's Orders did not prohibit access to Zeco's restaurants. Zeco was permitted to continue takeout and delivery services. As a result, there is no coverage available to Zeco under the Civil Authority coverage provisions, or any of the other coverage grants contained in the FMIC policy.

Lether Law Group
1848 Westlake Avenue N, Suite 100
Seattle, WA 98109
P: (206) 467-5444  F: (206) 467-5544

# IV.    CONCLUSION

There is no coverage for the insurance claims asserted by Zeco because (1) the alleged losses were not caused by direct physical loss of or damage to any property, (2) Zeco's claims are excluded by the Virus Exclusion, and (3) no civil authority prohibited access to Zeco's insured locations. FMIC respectfully requests that the Court grant this Motion for Summary Judgment and enter a declaratory ruling stating it does not owe Zeco any Business Interruption coverage under the FMIC Policy.

DATED this 17th day of September, 2021.

LETHER LAW GROUP

*/s/ Thomas Lether*
Thomas Lether, OSB #101708
tlether@letherlaw.com
*/s/ Eric J. Neal*
Eric J. Neal, OSB #110268
eneal@letherlaw.com

KENNEDYS

*/s/ Kristin Gallagher*
Kristin V. Gallagher, *pro hac vice*
Kristin.Gallagher@kennedyslaw.com
*/s/ Daniel Pickett*
Daniel Pickett, *pro hac vice*
Daniel.Pickett@kennedyslaw.com
*Attorneys for Defendant First Mercury Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under the penalty of perjury under the laws of the United States of America that on this date I caused to be served in the manner noted below a true and correct copy of the foregoing on the following party(ies):

Kyle Sturm
Nick Thede
Foreman Sturm & Thede, LLP
PO Box 13098
Portland, OR 97213
Kyle.sturm@foremansturm.com
Nick.thede@foremansturm.com
*Attorneys for Plaintiff*

Nick Kahl
Nick Kahl LLC
209 SW Oak St., Suite 400
Portland, OR 97204
nick@nickkahl.com
*Attorney for Plaintiff*

Craig Lowell
Wiggins Childs Pantazis Fisher Goldfarb LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203
clowell@wigginschilds.com
*Attorney for Plaintiff (Pro Hac vice application Forthcoming)*

Kristin V. Gallagher
Daniel Pickett
120 Mountain View Boulevard
Basking Ridge, New Jersey 07920
Kristin.Gallagher@kennedyslaw.com
Daniel.Pickett@kennedyslaw.com
*Attorneys for Defendant (pro hac vice)*

**By:        [ ] First Class Mail            [X] ECF**

DATED this 17th day of September, 2021 at Seattle, Washington.

*/s/ Jessica Bowman*
Jessica Bowman  | Paralegal

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544