IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ZECO DEVELOPMENT GROUP, LLC, DBA RIVER PIG SALOON,** an Oregon limited liability company, individually and on behalf of all others similarly situated, <br><br>  Plaintiff, <br><br> v. <br><br> **FIRST MERCURY INSURANCE COMPANY,** a foreign corporation, <br><br>  Defendant. | Case No. 3:21-cv-406-SI <br><br> **OPINION AND ORDER** |

Kyle A. Sturm and Nicholas A. Thede, FOREMAN STURM & THEDE LLP, 3519 NE 15th Ave., Suite 489, Portland, OR 97212; Nicholas A. Kahl, NICK KAHL LLC, 209 SW Oak Street, Suite 400, Portland, OR 97213. Of Attorneys for Plaintiff.

Kristin v. Gallagher and Daniel Pickett, KENNEDYS CMK LLP, 120 Mountain View Blvd., Basking Ridge, NJ 07920; Thomas Lether and Eric Jay Neal, LETHER LAW GROUP, 1848 Westlake Avenue N., Suite 100, Seattle, WA 98109. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Zeco Development Group, LLC (Zeco) brings this lawsuit against its insurer, First

Mercury Insurance Company (First Mercury), challenging First Mercury's refusal to cover the

loss of Zeco's intended use of its property resulting from Governor Kate Brown's executive

PAGE 1 – OPINION AND ORDER

orders enacted in response to the COVID-19 pandemic. Both parties agree that their dispute turns on the meaning of a phrase in Zeco's insurance policy (Policy) that requires the insured to have suffered "direct physical loss of or damage to" the covered property. Zeco contends that the phrase includes the insured's loss of its intended *use* of the covered property. First Mercury argues that the phrase requires dispossession of the property or some physical alteration to the property. First Mercury moves for summary judgment, arguing that the Policy does not cover Zeco's loss of its intended use of the property and even if it did, two exclusions under the Policy would apply. Zeco also moves to certify two questions to the Oregon Supreme Court. For the reasons below, the Court grants First Mercury's motion for summary judgment (ECF 21) and denies Zeco's motion to certify (ECF 27).

## STANDARDS

**A. Certified Question to the Oregon Supreme Court**

The Oregon Supreme Court may answer a certified question of law from a United States District Court if the question "may be determinative of the cause pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court and the intermediate appellate courts of this state." Or. Rev. Stat. (ORS) § 28.200. The Oregon Supreme Court requires that each certified question meet these criteria:

> (1) The certification must come from a designated court; (2) the question must be one of law; (3) the applicable law must be Oregon law; (4) the question must be one that "may be determinative of the cause;" and (5) it must appear to the certifying court that there is no controlling precedent in the decisions of this court or the Oregon Court of Appeals.

*W. Helicopter Servs., Inc. v. Rogerson Aircraft Corp.*, 311 Or. 361, 364 (1991) (quoting ORS § 28.200). Even if a question meets these five criteria, the decision to certify a question to a state supreme court "rests in the 'sound discretion' of the district court." *Freyd v. Univ. of Or.*, 990

F.3d 1211, 1223 (9th Cir. 2021) (quoting *In re Complaint of McLinn*, 744 F.2d 677, 681 (9th Cir. 1984)). When a district court faces an unclear question of state law, "resort to the certification process is not obligatory." *Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1009 (9th Cir. 2009). Federal courts "regularly decide issues of state law without certifying questions to the state's highest court." *U.S. Bank, N.A., Tr. for Banc of Am. Funding Corp. Mortgage Pass-Through Certificates, Series 2005-F v. White Horse Estates Homeowners Ass'n*, 987 F.3d 858, 867 (9th Cir. 2021).

**B. Summary Judgment**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

There are no disputed material facts. Zeco is an Oregon limited liability company that owns and operates two taverns known as River Pig Saloon, which are in Portland and Bend,

Oregon. Zeco obtained an all-risk commercial property insurance policy that covered both River Pig Saloon locations from October 2019 to October 2020. The Policy's Business Income and Extra Expenses coverages apply only if the insured suffered "direct physical loss of or damage to" the covered property. ECF 22-3, at 128. The Policy also includes a Virus Exclusion, which excludes from coverage any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease," and an Acts or Decisions Exclusion, which excludes from coverage damage caused by "[a]cts or decisions . . . of any person, group, organization or governmental body." ECF 22-3, at 113, 117.

Beginning March 17, 2020, Governor Brown issued a series of executive orders that prohibited in-person dining at restaurants, bars, and other food and drink establishments. Governor Brown's executive orders permitted those establishments to remain open for take-out and drive-through services. In compliance with those orders, Zeco closed its taverns for in-person dining.

## DISCUSSION

### A. Certified Question to the Oregon Supreme Court

After the parties fully briefed First Mercury's motion for summary judgment, Zeco moved to certify the following two questions to the Oregon Supreme Court:

> (1) If the primary physical use of an insured's covered property has been directly prohibited, does such direct prohibition constitute a "direct physical loss" within the meaning of a property insurance policy that includes ISO forms CP 00 10 10 12, CP 10 30 09 17, and CP 00 30 10 12?
>
> (2) Where an insured's loss has multiple causes, one or more of which the insurance policy covers and one or more of which it excludes from coverage, does Oregon law require a factual determination of the predominant or "efficient proximate cause" of the loss before an insurance company can properly deny coverage?

PAGE 4 – OPINION AND ORDER

Zeco contends this Court should certify because the Oregon appellate courts have not provided definitive resolution to the precise questions presented. For the reasons explained below, however, Oregon appellate courts have offered sufficient guidance suggesting that the Oregon Supreme Court would conclude that the plain meaning of "direct physical loss of or damage to" property requires dispossession or physical alteration to the property. *See Wyo. Sawmills, Inc. v. Trans. Ins. Co.*, 282 Or. 401 (1978); *Farmers Ins. Co. of Or. v. Trutanich*, 123 Or. App. 6 (1993). Considering that guidance, the fact that the Oregon courts have not answered the precise question presented here does not warrant certification.

Additionally, because the parties agree that Zeco was not dispossessed of its property and that the property was not physically altered, Zeco's second question relating to whether the Policy's Virus Exclusion applies is not determinative of the cause. *See W. Helicopter Servs.*, 311 Or. at 364; *see also Stollenwerk v. Tri-W. Health Care All.*, 254 F. App'x 664, 668-69 (9th Cir. 2007) (declining to certify because, considering the court's analysis of other issues, the state supreme court's "answer to the legal question on which Plaintiffs seek certification would not affect our disposition of this case"). Thus, the Court declines to certify either question to the Oregon Supreme Court.

**B.  Summary Judgment**

The parties agree that the primary legal question before the Court is whether Zeco's closure of its taverns for in-person dining amounts to a "direct physical loss of or damage to" that property under the Policy. If it does not, then the Court must grant First Mercury's motion for summary judgment. If the closures do constitute a "direct physical loss of or damage to" the property, the Court must then determine whether the Virus Exclusion or Acts or Decision Exclusion applies.

**1. Oregon Rules of Insurance Policy Construction**

The interpretation of an insurance policy is a question of law, and the Court's task is to determine the parties' intentions. *Hoffman Constr. Co. v. Fred S. James & Co.*, 313 Or. 464, 469 (1992). "We determine the intention of the parties based on the terms and conditions of the insurance policy," *id*., as interpreted from the perspective of the "ordinary purchaser of insurance." *Totten v. N.Y. Life Ins. Co.*, 298 Or. 765, 771, (1985); *see also Hunters Ridge Condo. Ass'n v. Sherwood Crossing, LLC*, 285 Or. App. 416, 422 (2017) (stating that the terms of an insurance policy are to be interpreted according to the understanding of an ordinary purchaser of insurance); *Boly v. Paul Revere Life Ins. Co*., 238 Or. App. 702, 708-09, *rev. den.*, 350 Or. 130 (2011) (noting that the meaning of a term in an insurance policy that is not defined in the policy is to be determined based on the understanding of an ordinary purchaser (citing *Botts v. Hartford Accident & Indem. Co*., 284 Or. 95, 100 (1978))).

If an insurance policy explicitly defines a disputed term, then a court should apply that definition. *Groshong v. Mut. of Enumclaw Ins. Co.*, 329 Or. 303, 307-08 (1999). But if the policy does not define the term, a court should review various aids of interpretation, first considering whether the term has a plain meaning, because it "is susceptible to only one plausible interpretation." *Id*. at 308.

If the term has a plain meaning, a court should apply that meaning and the analysis is complete. If the term has more than one plausible interpretation, a court should proceed to the second interpretive aid, *id*. at 312, which involves examining the term "in light of 'the particular context in which that term is used in the policy and the broader context of the policy as a whole.'" *Hoffman*, 313 Or. at 470. If an ambiguity remains after that analytical step, then "any reasonable doubt as to the intended meaning of such [a] term[ ] will be resolved against the insurance company." *Shadbolt v. Farmers Ins. Exch.*, 275 Or. 407, 411 (1976). "A term is

ambiguous . . . *only* if two or more plausible interpretations of that term withstand scrutiny, *i.e.*, continue[ ] to be reasonable," despite a court's use of the interpretive aids outlined above. *Hoffman*, 313 Or. at 470 (emphasis in original).

Additionally, the insured bears the initial burden of showing policy coverage. *Emps. Ins. of Wausau, A Mut. Co. v. Tektronix, Inc.*, 211 Or. App. 485, 509 (Or. App. 2007). The insurer has the burden of showing an exclusion under the policy applies. *Id.*

### 2. Direct Physical Loss

Zeco contends that both the Policy's Business Income coverage and its Extra Expenses coverage apply to Zeco's loss of use of its property for in-person dining. Zeco also sought coverage under the Policy's Civil Authority provision but has since withdrawn that claim. *See* ECF 23, at 38. The Policy's Business Income and Extra Expenses coverages apply only if the insured incurs some "direct physical loss of or damage to" the covered property that is not excluded by another provision of the Policy. The Policy does not define "direct physical loss."

First Mercury contends that "direct physical loss" requires dispossession or some physical alteration to the covered property. Zeco argues that "direct physical loss" covers not only physical damage but also the insured's loss of the property's intended use. The Oregon appellate courts have not directly answered the question the parties present but have provided useful guidance. The Court, thus, considers how the Oregon Supreme Court likely would rule if faced with the question. *See In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990) (stating that without specific state supreme court guidance, a federal court "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance").

Although not faced with the same policy text at issue in this case, Oregon courts have held that insurance policies that cover "physical" loss or damage unambiguously require some

physical alteration to that property and does not include merely intangible loss. In *Wyoming Sawmills, Inc. v. Transportation Insurance Co.*, the Oregon Supreme Court considered the meaning of the phrase "physical injury to or destruction of tangible property" and explained that the inclusion of the word "physical" "negate[d] any possibility that the policy was intended to include" only intangible damage, such as depreciation in value. 282 Or. at 405-06. Further, in *Farmers Insurance Co. of Oregon v. Trutanich*, the Oregon Court of Appeals explained that a pervasive odor caused by a meth operation amounted to "direct physical loss" to the covered property only because there was "evidence that the house was physically damaged by the odor." 123 Or. App. at 10.

Here, like the policies in *Wyoming Sawmills* and *Farmers Insurance*, the inclusion of the word "physical" confers the plain meaning that any "loss of or damage to" the property must be physical in nature. Thus, loss of only an intended use of the property (as opposed to total dispossession) is not a "direct physical loss." Even Zeco's asserted plain meaning of "direct physical loss" confirms that the covered property must undergo some physical alteration or dispossession. Zeco argues that the plain meaning of "direct physical loss" is the "inability to keep or maintain a material thing that results from a particular cause." ECF 23, at 17. Zeco's inability to use its property for in-person dining, however, is not a "material thing." Rather, Zeco's property is the "material thing," and Zeco has been able to keep and maintain that property. Zeco's interpretation is therefore implausible.[1]

---

[1] Other courts applying Oregon law have reached similar conclusions. *See, e.g.*, *Zedan Outdoors, LLC v. Ohio Sec. Ins. Co.*, 2022 WL 298337, at *6 (D. Or. Jan. 10, 2022), *report and recommendation adopted*, 2022 WL 294953 (Feb. 1, 2022); *Dakota Ventures, LLC v. Or. Mut. Ins. Co.*, --- F. Supp. 3d ---, 2021 WL 3572657, at *7 (D. Or. 2021) (concluding that "direct physical loss of or damage to" property requires the insured "to lose of possession of its property or demonstrate a physical alteration in the condition of its property for coverage to apply"); *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, 1999 WL 619100, at *5 (D. Or. Aug. 4, 1999)

Applying California law, the Ninth Circuit similarly has concluded that "direct physical loss of or damage to" insured property did not cover loss of an intended use. In *Mudpie, Inc. v. Travelers Casualty Insurance Co. of America*, owners of a children's store closed the store to comply with the Governor of California's executive orders issued during the COVID-19 pandemic. 15 F.4th 885, 888 (9th Cir. 2021). Like the Policy here, the store owner's insurance policy covered "direct physical loss of or damage to" covered property. *Id.* The store owners argued that the policy did "not require actual damage to the property but merely require[d] that the property no longer be suitable for its intended purpose." *Id.* at 891. The Ninth Circuit rejected that position, explaining that California courts had distinguished intangible and economic losses from physical losses when interpreting similar policy language. *Id.* at 892. The Ninth Circuit therefore concluded that the store owner's policy did not cover loss of the store's intended use because the property remained physically unaltered and the owners had not suffered permanent dispossession. *Id.*

Zeco argues that *Mudpie* does not apply here because California law does not impose the standards of construction favorable to policy holders as does Oregon law. But under California law, as the Ninth Circuit explained in *Mudpie*, courts apply the "clear and explicit" meaning of terms as understood in their "ordinary and popular sense." *Id.* at 890. Under Oregon law, only if there is no plain meaning and there remains ambiguity after considering the phrase in the context

---

(citing *Wyoming Sawmills* and stating: "The policy language in this case is not ambiguous. Therefore, only direct, physical loss of or damage to covered property is covered by the policy. This conclusion is consistent with plaintiff's assertion that all of the property has suffered direct, physical loss. . . . the policy issued to plaintiff by defendant does not cover consequential or intangible damage."); *Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. & Loan Ass'n*, 793 F. Supp. 259, 263 (D. Or. 1990) ("In this case, the policy language is even more specific than the language in *Wyoming Sawmills*. It uses the term '*direct* physical loss[.]' There is no evidence here of *physical* loss, direct or otherwise. The building has remained physically intact and undamaged. The only loss is economic.").

of the whole policy do courts apply a reasonable interpretation offered by the insured. *See Hoffman*, 313 Or. at 470. Thus, under both California and Oregon law, courts first consider whether the disputed text has a clear and plain meaning. Further, in reaching its conclusion, the Ninth Circuit in *Mudpie* emphasized that California courts distinguished between physical damage and intangible loss when interpreting similar policy language. *Mudpie*, 15 F.4th at 892 ("We cannot endorse Mudpie's interpretation because California courts have carefully distinguished 'intangible,' 'incorporeal,' and 'economic' losses from 'physical' ones."). Here, Oregon courts have drawn a similar distinction. *See Wyoming Sawmills*, 282 Or. at 406; *Farmers Insurance*, 123 Or. App. at 10.

Zeco also argues that this Court's decision in *James W. Fowler Co. v. QBE Insurance Corp.* requires the conclusion here that the Policy covers loss of an intended use of property even if the property remains undamaged. 474 F. Supp. 3d 1149 (D. Or. 2020), *rev'd on other grounds*, 2021 WL 4922552 (Oct. 12, 2021). In *Fowler*, this Court held that "direct physical loss of or damage to" property did not unambiguously require physical property damage. *Id.* at 1158. But as this Court noted, the insured's "alleged loss [was] hardly intangible." *Id.* at 1157. The insured's property in *Fowler* was buried 100 feet underground and allegedly irretrievable. *Id.* at 1154. The insurer in *Fowler* argued that the policy did not cover the insured's loss of heavy machinery buried underground because that machinery was not physically damaged in addition to being lost underground. *Id.* at 1155. Thus, the issue in *Fowler* was whether property must be both lost and damaged to gain coverage. *See id.* at 1158 (explaining that use of the disjunctive meant that the policy covered either property loss or property damage). Here, the property at issue has not been physically altered and Zeco has not been dispossessed of its property. To the contrary, the shutdown orders permitted Zeco to continue using its property for other services

PAGE 10 – OPINION AND ORDER

such as preparing and selling take-out orders. Zeco's property could not be used for its intended purpose—in-person dining, but because Zeco was not permanently dispossessed of its property, *Fowler* offers little guidance.

Zeco also relies on *Oregon Shakespeare Festival Association v. Great American Insurance Co.*, 2016 WL 3267247 (D. Or. June 7, 2016). *Oregon Shakespeare*, however, only confirms that "direct physical loss or damage" requires dispossession or physical damage. The plaintiff in *Oregon Shakespeare* had cancelled several shows at its open-air, partially enclosed theater due to nearby wildfires. *Id.* at *1. Smoke, soot, and ash from the fires settled on the seats and stage of the theater and "permeated the interior of the theatre, coating the seating, HVAC, lighting, and electronic systems." *Id.* The court held that the plaintiff's insurance policy that covered loss of business income from "direct physical loss or damage" covered the plaintiff's loss of income due to the wildfires. *Id.* at *9. The crux of the court's conclusion relied on the fact that the smoke, soot, and ash had caused physical damage to the air within the theater. *Id.* at *5 ("Certainly, air is not mental or emotional, nor is it theoretical. For example, if the dispute were over the theater's reputation or its fair market value, the Court might be inclined to agree with the Defendant. By contrast, while air may often be invisible to the naked eye, surely the fact that air has physical properties cannot reasonably be disputed."). Here, Zeco alleges no physical damage.

The plain meaning of "direct physical loss of or damage to" therefore requires dispossession of or physical alteration to the covered property. Because the parties agree that Zeco was not dispossessed of its property and Zeco's property suffered no physical alteration, Zeco has not met its burden to show that any provision of the Policy covers Zeco's losses. *See*

*Emps. Ins. of Wausau*, 211 Or. App. at 509 (stating that the insured bears the initial burden of showing policy coverage).

### 3. Policy Exclusions

Because Zeco has not met its burden to show that any provision of the Policy covers the loss of its intended use of the property, the Court need not consider whether the Virus Exclusion or Acts or Decision Exclusion applies.

## CONCLUSION

The Court GRANTS Defendant's Motion for Summary Judgment (ECF 21) and DENIES Plaintiff's Motion for Certification of Legal Questions to the Oregon Supreme Court (ECF 27).

**IT IS SO ORDERED**.

DATED this 14th day of February, 2022.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 12 – OPINION AND ORDER